**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ROBERT HALE**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES OF AMERICA**, <br><br> Defendant. | Civil Action No. 13-1390 (RDM) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion of the United States to dismiss for lack of subject-matter jurisdiction. The complaint includes a single claim, brought under the Federal Tort Claims Act ("FTCA" or "the Act"), 28 U.S.C. § 1346(b), alleging that Plaintiff Robert Hale sustained serious and lasting injuries when he fell through the ceiling of a building at the Washington Navy Yard while servicing equipment. The complaint alleges that the United States, as owner of the building where the injury occurred, owed Hale a duty to maintain the premises in a safe condition and that Hale's injuries were the direct and proximate result of the government's negligent failure to satisfy that duty. The United States, in turn, argues that the waiver of sovereign immunity contained in the FTCA does not extend to the negligent acts of government contractors and that it was Hale's employer, EMCOR Government Services ("EMCOR"), and not the United States, that was responsible for maintaining safe working conditions at the site. The United States, accordingly, contends that the complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.

For the reasons explained below, the Court concludes that the complaint adequately alleges subject-matter jurisdiction and that, to the extent the government's motion to dismiss turns on disputed facts regarding the allocation of responsibility and fault among those involved, it is premature. The motion to dismiss for lack of subject-matter jurisdiction is therefore **DENIED** without prejudice.

## I. BACKGROUND

### A. Factual Background

Although the parties disagree about who bears responsibility for the accident that led to this suit, for present purposes the events immediately preceding the accident are not disputed. Robert Hale worked for EMCOR, an independent contractor hired by the United States to provide base operations support at the Washington Navy Yard in Washington, D.C. Dkt. 11-1 at 1–2; Dkt. 20 at 1. On May 12, 2011, Hale was servicing equipment at a building at the Navy Yard and was working in a space between a drop ceiling and the roof, an area navigable only by walking along a catwalk consisting of plywood laid over steel beams. Dkt. 1 at 1–2 (Compl. ¶¶ 5–7). This area, the complaint alleges, was devoid of "railings, markings, or other warnings to indicate to [Hale] where it was safe to step," and the lighting was "inadequate for [him] to determine where it was safe to walk." *Id.* at 2 (Compl. ¶ 7). As a result, Hale "stepped off the plywood floor and fell through the ceiling below," sustaining "serious and permanent injuries, including a fracture to [his] right wrist." *Id.* (Compl. ¶¶ 8–9). According to the complaint, these injuries have "significantly affected [Hale's] ability to perform his customary daily activities," and have resulted in—and will continue to result in—substantial medical expenses, lost wages, and pain and suffering. *Id.* at 3 (Compl. ¶ 14).

Hale filed this action on September 12, 2013, alleging one count of negligence against the United States under the FTCA, *see* Dkt. 1, and the United States moved to dismiss for lack of subject-matter jurisdiction on June 10, 2014, *see* Dkt. 11. Along with its motion to dismiss, the United States filed a declaration from Raymond Connor, a Performance Assessment Representative at the Department of the Navy, *see* Dkt. 11-2 ("Connor Decl."), and a copy of the contract that governed the relationship between the Department and EMCOR, *see* Dkt. 11-3 ("EMCOR Contract"). The government argued that these materials, taken together, showed that EMCOR was responsible for maintaining the safety of the work site and that the Department of the Navy did not supervise or exercise control over EMCOR or any of its employees. *See* Dkt. 11-2 at 2 (Connor Decl. ¶ 7); Dkt. 11-3 at 69 (EMCOR Contract at 66, Spec. Item 2.9). According to the government, because the FTCA does not waive the sovereign immunity of the United States for the negligence of government contractors, the Court lacks jurisdiction to consider this case.

In opposition, Hale argued, among other things, that the government's motion to dismiss for lack of jurisdiction was premature because Hale had "not yet been afforded the opportunity to conduct discovery sufficient to oppose [the] motion." Dkt. 15 at 2. The Court agreed and granted the parties leave to take "discovery related to jurisdictional issues only." Minute Order, July 7, 2014. After taking that discovery, Hale filed his opposition to the government's motion to dismiss, in which he relied on his own declaration, excerpts from two depositions taken of Department of the Navy employees, an accident report apparently prepared by the Department of the Navy, and the minutes of a Department of the Navy meeting. Hale's declaration explains that, prior to the accident, he "had no knowledge of the danger posed by" the catwalk where the accident occurred. Dkt. 20 at 15 (Hale Decl. ¶¶ 3, 6). The deposition excerpts, in turn, indicate

that the two Department of the Navy witnesses did not know when the catwalk was installed or whether others in the Department were aware of the catwalk before the accident. *Id.* at 18–20 (Watts Dep. at 21–23); *id.* at 34–37 (Altenbach Dep. at 12–15). The accident report does not address whether any Department of the Navy employee was aware of the catwalk, but it does include a section captioned "ACCOUNTABILITY," which states: "It is the government's responsibility to ensure safe working conditions for all employees." *Id.* at 41 (Hale Ex. 4 at 3).

The government's reply largely repeats the arguments made in its opening brief, and, indeed, simply cuts and pastes a number of paragraphs that appeared in the opening brief. It does, however, attach some additional excerpts from the depositions of the same two Department of the Navy witnesses. In these excerpts, the Department's witnesses suggest that Hale should have used personal safety equipment, Dkt. 21-2 at 3–4 (Altenbach Dep. at 71–72), and should have reported the poor lighting conditions or other safety concerns before proceeding into the workspace, Dkt. 21-1 at 7–8 (Watts Dep. at 85–86). They also testified—based on photographs they were asked to review—that the catwalk did not "look like . . . something the government would build," *id.* at 12 (Watts Dep. at 90), that it "look[ed] . . . like something a maintenance contractor would put in place," *id.* at 13 (Watts Dep. at 91), and that the catwalk would not have met Navy specifications, Dkt. 21-2 at 4 (Altenbach Dep. at 72).

## B. Statutory Background

Under settled principles of sovereign immunity, the United States is subject to suit only if Congress waives that immunity. *See United States v. Sherwood*, 312 U.S. 584, 586 (1941). The scope of any such waiver, moreover, must be "strictly construed . . . in favor of the sovereign." *Lane v. Peña*, 518 U.S. 187, 192 (1996). Absent a clear waiver, the Court is without jurisdiction to adjudicate a claim against the United States. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994).

Hale relies on the waiver of sovereign immunity contained in the FTCA. The FTCA allows those who suffer injuries as a result of the negligence of "any employee of the [g]overnment" acting within the scope of his or her employment to bring suit against the United States where "the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). An "employee of the government" includes "officers or employees of any federal agency," but—central to the government's argument—the operative phrase "federal agency" does not include government contractors. *Id.* § 2671. Thus, the United States has not waived its sovereign immunity for suits arising from the negligence of government contractors, and courts lack jurisdiction to consider claims against the United States based on their negligence. *See United States v. Orleans*, 425 U.S. 807, 813–14 (1976).

Courts refer to this principle as the "independent contractor exception" to the FTCA. *Orleans*, 425 U.S. at 814. The exception "adopt[s] the common-law distinction between the liability of an employer for the negligent acts of his own employees and his liability for the employees of a party with whom he contracts for a specified performance." *Logue v. United States*, 512 U.S. 521, 526–27 (1973). Thus, where the government cedes daily operations to a contractor, it is not responsible for injuries caused by the negligence of the contractor or the contractor's employees. *See*, *e.g.*, *Logue*, 412 U.S. at 527.

Accordingly, to the extent Hale's claim is premised on the negligence of EMCOR or its employees, the waiver of sovereign immunity contained in the FTCA does not apply, and the Court is without jurisdiction. Conversely, however, to the extent Hale's claim is premised on the negligence of the Department of the Navy or its employees, the waiver applies, and the Court has jurisdiction to adjudicate the dispute.

## II. DISCUSSION

### A. Standard of Review

Although the Court permitted the parties to take limited discovery on jurisdiction, the present dispute arises in the context of a motion to dismiss the case at the threshold, pursuant to Rule 12(b)(1).  In this posture, as at other stages in the litigation, the plaintiff bears the burden of establishing that the Court has jurisdiction.  *See In re Swine Flu Immunization Products Liability Litigation*, 880 F.2d 1439, 1442–43 (D.C. Cir. 1989); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  But unlike challenges to jurisdiction raised later in a proceeding, a Rule 12(b)(1) motion may take one of two forms.  First, it may raise a "facial" challenge to the Court's jurisdiction, which contests the legal sufficiency of the jurisdictional allegations contained in the complaint.  *See Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006).  When framed in this manner, the Court must accept the allegations of the complaint as true and must construe "the complaint in the light most favorable to the non-moving party." *Id.*; *see I.T. Consultants, Inc. v. Republic of Pakistan,* 351 F.3d at 1184, 1188 (D.C. Cir. 2003).  In this sense, the Court must resolve the motion in a manner similar to a motion to dismiss under Rule 12(b)(6).  *See Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 93 (D.C. Cir. 2002).

Alternatively, a Rule 12(b)(1) motion may pose a "factual" challenge to the Court's jurisdiction.  *Erby*, 424 F. Supp. 2d at 182–83.  When framed in this way, the Court "'may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant,' but 'must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss.'" *Id.* (quoting *Phoenix Consulting Inc. v. Republic of Angola,* 216 F.3d 36, 40 (D.C. Cir. 2000)).  In this

context, the factual allegations of the complaint are not entitled to a presumption of validity, and the Court is required to resolve factual disputes between the parties. *Id.* at 183. The Court may consider the complaint, any undisputed facts, and "'the [C]ourt's resolution of disputed facts.'" *Id.* (quoting *Herbert v. Nat'l Acad. of Sciences,* 974 F.2d 192, 197 (D.C. Cir. 1992)).

A factual challenge to the jurisdictional allegations of a complaint, however, is subject to a significant limitation. Where resolution of disputed jurisdictional facts "requires a ruling on the underlying substantive merits of the case, the decision should await a determination of the merits either by the district court on a summary judgment motion or by the fact finder at the trial." 5B Charles Alan Wright, et al., *Federal Practice & Procedure* § 1350 (3d ed. 2004 & Supp. 2015) (internal footnotes omitted). As the D.C. Circuit has admonished, although a district "court may rule on disputed jurisdictional facts at any time, if they are inextricably intertwined with the merits of the case it should usually defer its jurisdictional decision until the merits are heard." *Herbert*, 974 F.2d at 198. This proviso to the usual rule ensures that, where jurisdictional defenses and the merits of a dispute overlap, the jurisdictional defense is not used—in the absence of special considerations—to short-circuit the factual development and adjudicative process to which a plaintiff is generally entitled.

Considered against this background, the government's challenge to the Court's jurisdiction can be viewed as a facial challenge or a factual challenge. Either way, however, the United States has failed to demonstrate that dismissal for lack of jurisdiction is warranted at this early stage of the proceeding.

## B. Facial Challenge to the Complaint

To the extent that the United States poses a facial challenge to the complaint's jurisdictional allegations, that challenge fails. The United States correctly notes that the FTCA

waives the government's sovereign immunity for claims arising from the negligent acts or omissions of government employees acting within the scope of their employment. *See* Dkt. 11-1 at 5 (citing 28 U.S.C. § 1346(b)(1)). The government also correctly observes that this waiver does not apply to the negligent conduct of independent contractors and that an independent contractor is "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." *Id.* (quoting *Cooper v. GSA*, 225 F. Supp. 2d 1, 3 (D.D.C. 2002) (internal quotation marks and citation omitted)). And, at least for present purposes, it is undisputed that EMCOR and its employees were serving as independent contractors and not as agents or employees of the United States.

Thus, according to the United States, the complaint must be dismissed because the FTCA does not waive sovereign immunity for EMCOR's negligent acts or omissions. The government's argument, however, misses one fundamental point: The complaint does not claim that EMCOR's negligence caused Hale's injuries but instead alleges that the United States failed to maintain its premises in safe manner. It alleges, for example, that the United States, "as the property owner, owed [Hale], as an invitee on the premises, a duty to maintain the premises in a safe condition, including the areas on or about the mezzanine level where [Hale] was injured," Dkt. 1 at 2 (Compl. ¶ 11), and that the United States failed to maintain adequate lighting, failed to mark or warn where it was safe to step, failed to install a railing or boundary to prevent falls, failed to ensure that the mezzanine level floor was "secured," and failed to comply with federal safety standards, *id.* at 2–3 (Compl. ¶ 12).

That formulation of Plaintiff's claim, moreover, finds support in District of Columbia law, which imposes a duty on landowners to show reasonable care to all persons lawfully present

on the landowner's property. *Smith v. Arbaugh's Rest., Inc.*, 469 F.2d 97, 100 (D.C. Cir. 1972). [1] A plaintiff seeking to recover for a breach of this duty must show "that the defendant had notice—either actual or constructive—of the present existence of an allegedly dangerous condition." *Smith v. Washington Sheraton Corp.*, 135 F.3d 779, 782 (D.C. Cir. 1998) (internal quotation marks and citation omitted).[2] Thus, under Hale's theory of the case—which is not separately challenged in the present motion—if the United States, as the property owner, had actual or constructive notice of the allegedly hazardous condition at the Navy Yard, then it is potentially subject to suit under the FTCA.

The government may well be able to show that Hale's injuries resulted from the negligence of EMCOR employees, and Hale's claim is thus closely related to a potential negligence claim against EMCOR. But the fact that the FTCA does not waive sovereign immunity for claims against independent contractors does not preclude claims based on closely related acts committed by government employees. In *Logue v. United States*, for instance, a federal prisoner committed suicide while being held at a county jail that had contracted to hold federal prisoners. 412 U.S. at 525. The Supreme Court held that the prisoner's family could not bring a claim under the FTCA based on the allegedly negligent acts of the employees of the county jail because they were employees of a "contractor" and not employees or officers of the United States. *Id.* at 526, 530. But it left open the possibility that the family might still have an FTCA claim based on the related failure, if any, of a federal deputy marshal, who was indisputably an employee of the United States, to make "specific arrangements . . . for constant

---

[1] In applying the FTCA, the Court "look[s] to the law of the local jurisdiction." *Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 508 (D.C. Cir. 2009).

[2] A defendant is charged with constructive notice "when or if the danger is . . . notorious or . . . long-continued." *Smith v. D.C.*, 189 F.2d 671, 674 (D.C. Cir. 1951).

surveillance of the prisoner," while he was in the custody of the employees of the county jail. *Id.* at 532–33 (internal quotation marks and citation omitted).

The same logic applies here. Hale cannot sue the United States based on the negligence of EMCOR or its employees—nor has he attempted to do so. But to the extent he seeks to prove that the United States, acting through one of its employees or officers, caused his injuries through a negligent act or omission, he can proceed. He can do so, moreover, even if the acts of EMCOR employees, which the FTCA does not cover, overlap with any covered acts of government employees responsible for maintaining the safety of the premises.

In response, the United States asserts that "[a]lthough [Hale] has styled his Opposition to concentrate on who controlled the premises or the land[,] that is not the issue under consideration related to jurisdiction." Dkt. 21 at 5. But that is *exactly* the issue under consideration related to jurisdiction. The complaint focuses on the government's responsibility "as the property owner," Dkt. 1 at 2 (Comp. ¶ 11), to maintain a safe premises—a duty D.C. law imposes on all property owners. It is against the allegations of the complaint as Hale has framed them that the Court must consider the government's facial challenge to the Court's jurisdiction. That Hale could not have brought a claim against the United States based on EMCOR's negligence says nothing about the claim he has actually brought based on the government's alleged negligence.

The Court, accordingly, rejects the government's facial jurisdictional challenge.

**C. Factual Challenge to the Complaint**

Because the government relies on EMCOR's contract with the United States, a brief declaration, and a handful of deposition excerpts, it is also necessary to consider whether it has mounted a sufficient factual jurisdictional challenge. The government's principal argument is "that Hale[']s injuries were the result of the negligence of EMCOR, that EMCOR was an

independent contractor of [the United States], and that [the United States] is therefore immune to suit under the independent contractor exception to the Federal Tort Claims Act's waiver of sovereign immunity." Dkt. 21 at 2. Framed in this manner, the government's motion fails for two reasons.

First, as explained above, the government's motion attacks a straw man. The motion asserts that "[t]he issue" presented in this case "is who supervised and controlled the employment/work of [Hale] and that was EMCOR." Dkt. 21 at 5. But that is not the case that Hale has brought. Despite the government's assertions to the contrary, this case is about whether the government maintained the premises in a safe manner and whether it is responsible for any dangerous conditions that may have existed at a facility it owned. Dkt. 1 at 2 (Compl. ¶¶ 11–13).

The only instance where the United States addresses the claim that Hale is actually pursuing is in a single footnote in the reply brief. *See* Dkt. 21 at 5 n.2. In that footnote, the government relies on a quote from *Cooper v. GSA*, where the district court observed that under D.C. law "a landowner must have actual or constructive notice of a dangerous condition before she may be held liable for failing to correct it." 225 F. Supp. 2d at 5. The government then argues that "[t]he evidence identified during the jurisdictional discovery period has shown [that] the 'catwalk' was apparently built by a contractor without the knowledge or permission of any government employee." Dkt. 21 at 5 n.2. *Cooper*, however, offers no support for the government's position. Unlike the present case, *Cooper* arose on summary judgment, and the plaintiff had failed to identify "any evidence that the federal defendants had any advance notice of the allegedly dangerous conditions that ultimately injured her."[3] *Cooper*, 225 F. Supp. 2d at

---

[3] Some district courts in other jurisdictions have rejected FTCA claims based on common law premises liability theories. *See Hall v. United States*, 825 F. Supp. 427, 433 (D.N.H. 1993) ("New Hampshire common law duties cannot imbue the defendants with liability under the

5. Here, in contrast, the government merely mentions the issue of actual or constructive knowledge in a footnote in a reply brief in support of a threshold motion. The government, of course, is not entitled to summary judgment based on an argument that was raised for the first time on reply in a footnote in a motion to dismiss. *See Jones v. Mukasey,* 565 F. Supp. 2d 68, 81 (D.D.C. 2008) ("As the D.C. Circuit has consistently held, the Court should not address arguments raised for the first time in a party's reply." (citations omitted)). But even if the government had properly raised the issue in its opening brief, it has failed, unlike in *Cooper*, to meet the summary judgment standard of showing that there is no genuine dispute of material fact with respect to the government's actual or constructive knowledge. At best, the evidence shows that neither of two witnesses was personally aware of the dangerous catwalk and otherwise merely offers speculation about who may have built the catwalk and whether other Department of the Navy employees were aware that it was there. *See* Dkt. 21-1 at 23–26 (Watts Dep. at 101–04); Dkt. 20 at 34, Dkt. 21-2 at 4–5 (Altenbach Dep. at 12, 72–73). That would not be enough on summary judgment, and it is not enough here.

Second, the government's motion to dismiss simply previews a number of factual issues going to the ultimate merits of Hale's claims. The government asserts, for example, that the EMCOR Contract made EMCOR responsible for ensuring that the work site was safe, that its

---

FTCA . . . ."); *Flanagan v. United States*, 430 F. Supp. 2d 106, 114 (W.D.N.Y. 2006) (relying on *Hall* to conclude that "the FTCA does not permit liability based on nondelegable duties allowed by the common law"). The courts in both *Hall* and *Flanagan*, however, understood the landowner's duty as imposing strict liability. *See Hall*, 825 F. Supp. at 432; *Flanagan*, 430 F. Supp. 2d at 113. The FTCA, meanwhile, allows suits only for negligence. *See* 28 U.S.C. § 1346(b)(1) (granting district courts jurisdiction to hear certain claims "caused by the negligent or wrongful act or omission" of any government employee acting within the scope of employment); *see also Laird v. Nelms*, 406 U.S. 797 (1972). Here, the Court must "look to the law of the local jurisdiction," *Hornbeck*, 569 F.3d at 508—that is, the District of Columbia—and the District of Columbia has adopted a negligence standard for premises liability. *See*, *e.g.*, *Washington Sheraton*, 135 F.3d at 782. *Hall* and *Flanagan* are thus inapposite.

employees had the proper training and equipment, and that any safety concerns were promptly brought to the attention of the Department of the Navy.  *See* Dkt. 11-1 at 3; Dkt. 21 at 2–3.  Hale, in response, argues that this overstates the scope of EMCOR's responsibility, which was limited to ensuring that EMCOR's work was performed in a safe manner—as opposed to "ensuring the safety of the property in general."  Dkt. 20 at 4.  Similarly, the government contends that the accident was the product of Hale's negligence and that he should have proceeded with greater caution when working in a poorly lit space and should have used appropriate safety equipment.  Dkt. 21 at 3.  Hale, in turn, observes that the government's own accident report concluded that it was "'the government's responsibility to ensure safe working conditions for all employees,'" Dkt. 20 at 8 (quoting Hale Ex. 4 at 3), that the safety of the catwalk was the government's responsibility, and that "the danger of falling through the ceiling was not apparent to [Hale] or EMCOR until the accident had occurred."  Dkt. 20 at 9.

      The limited deposition testimony appended to the parties' briefs does not come close to resolving these disputes.  To the contrary, it consists largely of speculation about what may have happened and suppositions about what the government might, or might not, have approved.  *See* Dkt. 21-1 at 23–26 (Watts Dep. at 101–04); 21-2 at 4–5 (Altenbach Dep. at 72–73).  Although courts must, at times, resolve factual disputes raised in threshold jurisdictional motions, the disputed jurisdictional facts at issue here are indistinguishable from the central question on the merits of who was at fault.  This is, in short, precisely the type of case where a court "should . . . defer its jurisdictional decision until the merits are heard."  *Herbert*, 974 F.2d at 198.  To hold otherwise would, in effect, transform virtually every FTCA merits dispute into a threshold jurisdictional contest.  There is no reason to conclude that Congress intended for courts to resolve the merits of garden-variety FTCA cases in the context of Rule 12(b)(1) motions or that

principles of sovereign immunity require adjudication of fault at the threshold, before the parties have had the opportunity fully to develop the facts and their respective cases.

At trial—or even on a summary judgment motion filed after the completion of discovery—the government is free to argue that it was not at fault, that it was not aware of the dangerous condition at the site, or that Hale or EMCOR was at fault.  But those arguments turn on factual disputes that are central to the merits of Hale's claim, and their resolution requires that the parties first be afforded a more complete opportunity to discover and to dispute the relevant facts.

### III.  CONCLUSION

For the reasons discussed above, the government's motion to dismiss under Fed. R. Civ. Pro. 12(b)(1) is **DENIED** without prejudice.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  December 2, 2015